Good morning, Your Honors. My name is Robert Powell, appearing here on behalf of Mr. Flores. I would like to reserve two minutes by way of rebuttal. We submit that the decision made by the Board of Immigration Appeals in this case denying Mr. Flores' 212C application and denying the motion to reopen, the motions that were filed, contain legal errors and should be reversed. First of all, the Board, in its September 2004 decision, made a legal error with respect to its interpretation of Washington State law concerning rape, RCW 9A.44.073. What it says is you can't go behind it. It is what it is, and the I.J. was wrong in trying to figure out whether or not he engaged in intercourse or not. The immigration judge did not go behind the conviction in this case. In fact, the facts that the immigration found, the factual findings made by the immigration judge, are consistent, are fully consistent with the way that Washington State law defines rape. It does not require penetration of the vagina. It includes sexual contact. The immigration judge recognized that. He called that inappropriate touching. But that's clearly covered by Washington State law. Now, the Board, the legal error that the Board of Immigration Appeals made was that it thought, it presumed, or said, in fact, that the only way that you can be convicted under this statute is if there is penetration involved. That's — and the Board, therefore — The Board says it doesn't matter. You've got the conviction. The conviction is what it is. You can't undermine it by re-litigating what happened there. You now have to show equities to — to overcome the conviction. And your client hasn't shown enough equities. What's — where's the error there? Okay. Well, even assuming that there was no legal error involved, the Board still made a decision, a legal error, in overturning the immigration judge's decision for the following reason. First of all, the statute — the statute clearly allows a person with this conviction to apply for 212C relief. The statute is broad enough. Clearly, a person is — And they did not say otherwise. They said he could. Right. But in this case, the equities don't outweigh it. And we can't really — we can't second-guess that decision. Well, but the legal error that's made with respect to that alleged — We can't — we cannot second-guess that decision, right? We can. What we can do is look to see whether the exercise of discretion was wrong. I'm sorry. I don't understand your answer to my question. Can we second-guess a determination by the Board that the equities are insufficient? Well, I'm not sure exactly what you mean by second-guess, but the Court cannot — Review. Can we review? You can — yes, the exercise of discretion can be reviewed. That's clear, and it can be reviewed to see whether the Board violated any governing precedent, a Board precedent or Federal court precedent or regulations. That's in the review. There is clearly jurisdiction to review to determine whether or not the Board's exercise was lawful or unlawful, consistent with the governing precedents or inconsistent with the governing precedents. I thought we don't have jurisdiction to review the discretionary decision. Well, the Hernandez case, I think, that's cited in our — is relevant. In that case, there was a discretionary denial of adjustment of status. And when the judge exercised discretion, she did so in a manner inconsistent with the governing Board precedent. And the Court said, yes, there is jurisdiction to review that — that — there is jurisdiction to review that component of the exercise of discretion. An error of law. For an error of law. Okay. So what's the error of law here? So in this case, the case law, Federal court and governing Board precedent is absolutely clear that in exercising discretion in 212c, we have to — the adjudicator must look — must make relevant factual findings concerning what the offense was. In the — for example, in the Yepis-Prado case. I'm sorry. Yepis-Prado? What authority are you relying on? The part that says at page 1371 — Go ahead. Okay. The part says — first of all, the Court says that it's Congress, not the agency, that determines whether or not individuals are categorically disqualified from this benefit. So it's 1371? 1371, yes. Okay. And second, if a person is not categorically barred, such as Mr. Flores, then the adjudicator must consider — must consider the applications on a case-by-case basis, carefully weighing all pertinent considerations, including — including the particulars of the Petitioner's criminal conduct. We need to know the nature and the circumstances. What exactly happened when this offense occurred? What are the facts surrounding the — So what is it that the BIA failed to do here? Didn't they look at his criminal — Well, yeah. Okay. So first — Conduct? I'm sorry? Didn't they look at his criminal conduct and say it wasn't? No, they did not. They did not. They looked at his conviction. They said, yes, there's a conviction. We're going to exercise discretion. Well, that's what I meant by conduct. That's the — that's the conduct. No, that's not the conduct, because the statute — By the way, the details behind support the conviction, except for the poor daughter who changed her story, perhaps because she needs the financial support of the person. And that's why we don't really want to be reviewing the facts behind the conviction. No. No. No. But that's — that's not correct. In all of these cases, and it's very clear on the Yepis-Prado-Edwards, the matter of Edwards case, the board precedent, you don't look behind the conviction to see whether the person is guilty or innocent. But you do look behind the conviction to see what happened. Is this a serious offense, more serious offense, or less serious offense? What were the nature and circumstances surrounding this — this incident? What — what — and the case law in the Federal court and board precedents are very clear. You do look at the underlying facts and circumstances of what happened to determine whether or not — what type of person this is. You do not look behind and say this person was innocent of the offense, but you look — you look at what happened in the offense. Yepis-Prado, the Gortzue case, which is cited in our — in our briefs, matter of Edwards, they all say you have to look behind — look at the particular facts and circumstances. That did not happen here. The Board of Immigration Appeals overturned the immigration judge's factual findings. That — that — Which, of course, it can do. That's right. But then we have to ask, well, okay, what are the factual findings for purposes of exercising discretion? What happened in this incident? The board does not have the authority to make those factual findings itself. And that's the error. So your position is that — that you have to relitigate the facts of every conviction. This is how you read Yepis-Prado. And our case law is that it requires to litigation of not just the conviction itself, but actually the underlying facts and the finding by an I.J. of the board as to what the facts were. That's exactly what Yepis-Prado says. The agency must examine the facts surrounding the precise offense. And that's what always — that's what typically happens in these — in these cases. The immigration judge looks to see what exactly was the offense. In the Edwards case, the — the Board of Immigration Appeals says that the exercise of discretion necessarily requires consideration of all the facts and circumstances involved, including the nature and the underlying circumstances of the offense. But that does not have — Can you find circumstances that would be inconsistent with the statute under which he was convicted? The — if the — if the immigration judge finds facts that are inconsistent with the conviction, inconsistent with what the conviction covers, then the board can reverse those factual determinations. The board did that in this case. We think that was a legal error because what the immigration judge found is, in fact, consistent with the statute. There were two late-filed cases, the Ramadan case and the In re MD case, In re MD ruling. Any comments on those, since you haven't had a chance to respond to them yet? Yes. The Ramadan case, I think, is consistent with — with the arguments here. The Court does have jurisdiction to review for constitutional errors and errors of law. And we submit this. What the board did here is an error of law. It exercised discretion. It made a decision inconsistent with the governing Federal court precedents. That's how Ramadan is — is relevant. And — What about In re MD on the jurisdiction to reopen by the immigration judge? Yes. So that relates to our argument that the board made an error in denying Petitioner and Mr. Flores' motion to reopen. The board said, we're going to deny the motion to reopen because the earlier remand was just a remand to enter an order of deportation. The immigration judge couldn't consider any new evidence. But didn't the BIA go beyond that and say, even if we were to reopen, we still take those facts into account and the balance still comes out against your plan? Not in that — not in the decision — not in that decision. I think that was a May 2005 decision. But that decision was made by the BIA. That was made by the BIA. But in that case — They did reweigh — they did reweigh with the new facts. No, they did not. Not in that decision. It was a subsequent motion to reopen that was filed later. It was that subsequent motion they did reweigh. In the subsequent one — So doesn't that make In re MD not relevant? No. I don't — I don't think so, because, again, if you look at that second decision, that second decision is flawed in the same way the original decision is. There's no underlying factual basis for exercising that discretion. You know, there are very significant relevant equities that were not factual findings that the Board — is not in the Board's decision. The fact that Mr. Flores presented him as he was not arrested, he went to the Child Protective Service saying, we need help. The fact that the court and the prosecutor did not sentence him to — he did not have to serve one day in jail. The court and the prosecutor in the criminal case recognized this is an exceptional case. The fact that the immigration judge granted the — But ultimately, you know, the exercise of discretion here is with the agency, not with us. I'm sorry? The exercise of discretion ultimately is with the agency, not with us. Ultimately, it is. But this Court can clearly review for — for legal error, for whether or not that has any precedence. Thank you. We'll hear from the Governor. Thank you, Your Honor. I think it's clear. May I just say, you didn't — you haven't had a chance to respond to Ronald McDonald and M.D., which came in late. What's your response on those? We have indicated in our brief from the very beginning, as we address the claims that the Petitioner has raised, that the court did have jurisdiction to the extent there was a question of law or constitutional claim. We believe that the Petitioner has asserted such claims and that the court has jurisdiction under 8 U.S.C. 1252a2c. And so, Ramanan really doesn't affect — has no effect. What do you make about — of Yepis Prada? I know this cited three times in the blue brief. It's — I don't see it at all in the red brief. I'm sorry? Yepis Prada, the case that Mr. Corral relies on, I didn't see it cited at all in your brief. Do you have an answer to his argument? The answer, essentially, is that after the REAL ID Act, there is — it makes it very plain that — or IRERA. It makes it very plain that there is no judicial review of the discretionary determination or the actual application of the board's discretion when it's deciding a 212c waiver application. I think the court has indicated in the Fernandez case, which is cited in our brief, that to the extent that the court at one time may have had the ability or jurisdiction to review Yepis Prada and cases like that arose in a context where the court was concerned that its own judicial review was frustrated by a decision by the board that wasn't sufficiently fleshed out. We don't have that circumstance here. And the court has indicated in the Fernandez v. Gonzales cases that those cases really don't lie. But we can review for errors of law, right? Yes. Okay. And the way your opposing counsel phrases the question, he says, look, there was an error of law here in that the BIA refused to look at the actual circumstances of the crime with which the petition is charged. And we know that the INS was required to do so because in Yepis Prada we said you can't just treat crimes generically. It was a drug crime in that case. You have to actually look at the facts of the crime. So when you decide how to set up the equities, you have to look at the crime specifically. Yepis Prada does say that. You don't deal with that in your brief, and I'm wondering if you can want to deal with it here as an argument. That's a legal argument. We disagree fundamentally, Your Honor, with the petitioner's position and his character realization of what actually occurred and what the board was doing. The petitioner did not come into court and testify with regard to the circumstances of the crime. He didn't say, oh, it happened because I was drunk or, you know, she, you know, administrative judge, she looked 18. I mean, it wasn't a description of the circumstances. Instead, he came in and did what he could not do, and that was collaterally attack the conviction. He came in and he and persons who testified on his behalf denied that he did any of the conduct that constitutes the crime, and that was what the board was actually reacting to. I don't think he did. I think what he said was, I did commit the crime, but there are various ways of committing the crime, and I committed in a way that's least offensive. There was no penetration. There was only minimal touching, which would nevertheless constitute an offense. I mean, the crime, that would be consistent with the conviction, but he said the actual conduct was not severe. So I don't think he was attacking the conviction. He wasn't saying, I didn't do it. You know, they got the wrong guy. He wasn't saying that. Well, to the extent that he said there was no penetration, he was denying the crime because the actual elements of the crime require penetration, even though it may be slight. And he said there was no penetration, and the victim testified only he only touched the top of my private parts. And the administrative law judge, in his decision, seemed to have said, I accept that, and I accept the fact that the kind of inappropriate groping that the ---- I'm sorry. I just want to make sure I understand. So it is your position that under the law of Washington, this is Washington law, right? This is Washington. State of Washington. In order to be convicted of the crime of which he was convicted, petitioner was convicted, there had to have been penetration? There had to have been penetration. That's correct, Your Honor. And he denied that. I'm sorry. And how do we know this? I'm sorry? How do we know this? I mean, is it ---- how do we know there has to have been penetration? It's part of the record, and it's certainly also part of the transcript. Well, no. I mean, you're talking about how a crime is defined. And what you're saying is you can't be guilty of this crime unless there's penetration. I think we could. Okay. So you can point to one of two things. You can point to the language of the statute, or you can point to a interpretation of the statute from the State courts saying you can't be guilty of this crime unless there was penetration. So which one do we want to look at? Do you want to look at the language of the statute? Yes. Okay. Okay. Let's look at it. It's through the definition of sexual intercourse, Your Honor. I'm sorry? The definition of sexual intercourse. And the crime involves ---- Okay. He was convicted of ---- what's the statute? 9A44073, rape of a child. 9A44 or what? 73. Okay. You got that there? Or 73? Yes. I have something in my brief if I ---- Yeah. Go right ahead. In the crime itself, the definition uses the word sexual intercourse. Yes. Which is defined ---- And that's the crime he was convicted of. Yes. A pattern of sexual intercourse with the victim and, again, sexual intercourse is defined in multiple ways. And to the extent that the Petitioner has criticized the Board, the Board has indicated that it's well aware that there are distinctions or many different ways in which the crime can be committed. Sexual intercourse could be penetration with an object, no matter how slight, or it could be sexual intercourse in the traditional sense that most people think of when they think of that term. It does not matter, though, for purposes of a conviction under the law of the State of guilty of rape, regardless of which one of those categories of intercourse ---- Once we have gotten past that question, which is a question of a law we can review, it's your position we can't review the next step. That's ---- We have no jurisdiction. That's correct. Okay. Okay. Thank you. Are there any other questions? Mr. Peral, what do you do with this? Sexual intercourse. It says right there in the statute. It's very hard to come up with shades of gray when the statute itself says sexual intercourse. If you look at RCW 9A.44.010 ---- Okay, hold on a second. Let me get that. Okay. It's long. That's a long provision. Which subsection? I'm looking at subsection 2. Well, it's not 2. Well, no, subsection 1. He was convicted of sexual intercourse, not sexual contact. Sexual intercourse includes sexual contact between sex organs of the mouth or ---- I'm sorry. What are you looking at? I'm sorry. Okay. RCW 9A.44. Right. .010. Right. It's a long section. Tell me which subsection. Subsections 1 and 2. Okay. 1 is sexual intercourse, has ordinary meaning and occurs upon any penetration. I have a slide. And it includes sexual contact. Subsection C extends it to any actual sexual contact, and subsection 2 then defines sexual contact, right? Yes. That's what you're arguing. Yes. So at a minimum, he had ---- he touched the sexual intimate parts of a person for the purpose of gratifying sexual desire of either party. Yes. Yes. I think that's conceded. And I think that's consistent with what the immigration judge said, that there was ---- he calls it improper touching. But, yeah. Well, there's a difference between improper touching and putting your sexual organ ---- I don't know. I mean, you know, improper touching could mean touching somebody on the breast through closing. It could mean touching somebody between their legs with underwear and pants on. Right. I understand. But this we're talking about. Sexual contact includes any touching. And why I ask is, look, this looks just like regular old sex, and we're not going to go behind it. And when you do something like that, you then have to show really, really great equity, which you haven't shown. There is a difference in seriousness between a person who penetrates with the penis and the vagina and the touching that's done. Now, I mean, Mr. Flores is not arguing that what he did was not terrible and egregious. Somebody could get pregnant this way. I'm sorry? Somebody could get pregnant this way. Well, the ---- again, Yepis Prado, I mean, it does require looking at the facts and circumstances, what happened. We can't under Yepis Prado. The board cannot properly categorically deny this application just because of the conviction of this offense, which is what it did. If you ---- it's required to consider the facts and circumstances. But it didn't do that. It didn't say we're not going to consider any equities because of the offense. What it said is this is pretty serious stuff, sexual intercourse, pretty serious stuff, and we're going to require really, really strong equities, which your client doesn't have. But the ---- it did not look at the ---- you know, if you ask the question, well, what are the particular facts and circumstances, what exactly happened, which is what you have to do under the governing precedents, the board can't answer that. There's no factual record there. It does not talk about precisely what happened, the dispute, whether or not ---- I think we understand the position. And also, it did not ---- it does not mention, did not consider the mitigating facts that Mr. Flores went ---- presented himself, said I have a problem and I need help in this case, did not consider the fact that the court found no jail time. Thank you. We'll take a short recess.
judges: Kozinski, Fisher, Guilford